IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WORTH & COMPANY, INC.          :          CIVIL ACTION
                               :
          v.                   :
                               :
PETER VON GETZIE, et al.       :          NO. 13-6927

<u>MEMORANDUM</u>

Bartle, J.                                      April 2, 2014

          Plaintiff Worth & Company, Inc. ("Worth"), a mechanical and plumbing contractor which bids on publicly-funded construction projects, brings this action under 42 U.S.C. § 1983 and for state-law tortious interference with contract against the Pennsylvania Apprenticeship and Training Council ("PATC"), its members in their individual and official capacities, PATC Acting Director Peter Von Getzie, and Secretary of the Pennsylvania Department of Labor & Industry Julia K. Hearthway.

          According to the amended complaint, the PATC has denied Worth's requests to permit modification of its state-registered apprenticeship training program so that Worth may use a greater proportion of lower-paid apprentices on publicly-funded projects than usually allowed in Pennsylvania.  The PATC has also allegedly failed to apply its apprenticeship rules to out-of-state contractors as required by federal regulations.

Now before the court is the defendants' motion to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

I.

When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. On a motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public

---

[1]  Worth's motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure (Doc. # 3) is also pending before the court. We have deferred any hearing on this motion pending our ruling on the defendants' motion to dismiss.

record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)).

When considering a facial attack on the complaint under Rule 12(b)(1) as we do here, "the trial court must accept the complaint's allegations as true." Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citing NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 & n.7 (3d Cir. 2001)). As in a Rule 12(b)(6) setting, the court should draw all reasonable inferences in the plaintiff's favor. NE Hub Partners, 239 F.3d at 341.

II.

The following facts for present purposes are accepted as true or taken in the light most favorable to Worth. Worth, one of the largest mechanical and plumbing contractors in Pennsylvania, bids on state- and federally-funded public construction contracts. These contracts are awarded on a competitive basis, and contractors seeking to win them must submit bids that include estimated material and labor costs on the contemplated work. Labor costs often make or break a bid because they are commonly the single largest line item in a projected budget.

On publicly funded construction projects, contractors must pay their employees consistent with federal and state

-3-

prevailing wage laws under the Davis-Bacon Act of 1931, 40 U.S.C. § 3141 et seq., and the Pennsylvania Prevailing Wage Act, 43 Pa. Cons. Stat. Ann. § 165 et seq.  These statutes ordinarily require employees to be paid the "journeyman" rate for their given trade. Nonetheless, under certain circumstances apprentices are allowed who are generally paid between 40% and 95% of the journeyman rate depending on experience and other factors.  A contractor can therefore make its bid on a publicly-funded contract more competitive by employing as great a proportion of apprentices as possible.

An apprentice may be paid below the journeyman rate only if he or she is registered as such and is participating in an approved apprenticeship program run by the employee's union or employer.  The U.S. Department of Labor ("DOL"), pursuant to authority granted to it by the National Apprenticeship Act of 1937, 29 U.S.C. § 50 et seq., has established the Office of Apprenticeship ("OA," formerly known as the Bureau of Apprenticeship and Training) to approve, administer, and regulate formal apprenticeship training programs throughout the country.  29 C.F.R. § 29.1 et seq.  To be approved at the federal level, such an apprenticeship program must have "[a] numeric ratio of apprentices to journeyworkers consistent with proper supervision, training, safety, and continuity of employment, and applicable provisions in collective bargaining agreements, except where such ratios are

-4-

expressly prohibited by the collective bargaining agreements." 29 C.F.R. § 29.5(b)(7).

States may also seek delegated authority over apprenticeship programs by obtaining approval from the OA to operate a State Apprenticeship Agency ("SAA"). Once approved, the SAA steps into the OA's shoes for purposes of approving and overseeing apprenticeship training programs within the state. Pennsylvania has obtained this authority, which it has vested in the PATC through the Apprenticeship and Training Act, 43 Pa. Cons. Stat. Ann. § 90.1 et seq.[2] The PATC has issued regulations for the administration of apprenticeship programs. See generally 34 Pa. Code § 81.1 et seq.

In Pennsylvania, unlike at the federal level, an apprenticeship training program must ordinarily feature a standard numeric journeymen-to-apprentice ratio. 34 Pa. Code § 83.5(b)(7). Pennsylvania requires a so-called "modified 5:1 ratio," that is, one apprentice is permitted for the first four journeymen, and a second apprentice is permitted for each five additional journeymen thereafter. Id. Although this is the default ratio, the PATC has discretion to grant ratio exemptions limited only by the flexible

---

[2] The PATC is a "departmental agency" of the Pennsylvania Department of Labor & Industry. 43 Pa. Cons. Stat. Ann. § 90.3. It has eleven voting members. Four members represent employees, four represent employers, and three represent the general public. All eleven are appointed by the Governor and serve four-year staggered terms. Id.

ratio standard articulated in 29 C.F.R. § 29.5(b)(7) and quoted above.  Id.

Pennsylvania's apprenticeship regulations have been revised only once, in 1995, but the regulatory field has changed since that time.  In October 2008, the DOL promulgated new federal regulations related to apprenticeship programs and SAAs.  These revisions required SAAs to enact new, state-level "legislation, regulations, policies and/or operational procedures" by December 29, 2010 that grant reciprocal recognition to out-of-state apprenticeship programs, subject to certain conditions.  29 C.F.R. § 29.13(c).  Specifically, the revised federal regulations direct an SAA to "[a]ccord reciprocal approval for Federal purposes to apprentices, apprenticeship programs and standards that are registered in other States ... if such reciprocity is requested by the apprenticeship program sponsor.  Program sponsors seeking reciprocal approval must meet the wage and hour provisions and apprentice ratio standards of the reciprocal State."  Id. § 29.13(b)(7).  All SAAs must also reapply to the OA for re-recognition.  Id. § 29.13(c).

To date, Pennsylvania has taken no action in response to these new rules, nor has it applied for re-recognition.  However, the rules do not provide for automatic de-recognition of an SAA for noncompliance with federal requirements.  Instead, the OA has the ability to initiate action to de-recognize an SAA.  29 C.F.R.

§ 29.13; 29.14(b).  The OA has taken no such action to derecognize the PATC.

Worth has a Pennsylvania-registered apprenticeship training program with the default 5:1 journeyman-to-apprentice ratio.  In August 2009 Worth sought an exemption from the PATC to change this ratio to 3:1, which the agency denied without explanation.  Worth subsequently requested permission for a 1:1 ratio in August 2012 and again in November 2013, both of which requests the PATC denied.  Because of these denials and the PATC's failure to take action to comply with current federal regulations, Worth alleges that out-of-state contractors with more lenient ratios have an unfair advantage in competing to win state- and federally-funded construction contracts in Pennsylvania.  Despite these allegations, the amended complaint does not name any out-of-state contractor that successfully outbid Worth because of its apprenticeship ratio, nor does Worth name any specific contract that it lost as a result of the actions or inactions of the PATC.

Worth's amended complaint contains five counts.  Count one seeks declaratory judgment "divesting the PATC of its purported legal authority as SAA, as well as appropriate injunctive relief preventing the PATC from acting in any such capacity or with the cloak of legal authority, during the pendency of this action."  In count two, citing 42 U.S.C. § 1983, Worth asserts a denial of equal protection.  Counts three and four allege violations under § 1983

-7-

of substantive due process and procedural due process, respectively.  Count five pleads that the acts of "the members of the PATC, in their individual capacity," constitute tortious interference with actual and prospective contractual relationships as a matter of state law.  Worth has clarified in its briefing that count five is the only one for which it seeks damages.

III.

We first turn to the defendants' contention that the Eleventh Amendment bars Worth's § 1983 claims brought in counts two through four.  Section 1983 provides a federal cause of action for individuals denied constitutionally protected rights by persons acting under color of state law.  42 U.S.C. § 1983.  Actions to vindicate a person's rights to equal protection, procedural due process, and substantive due process fall within the ambit of § 1983.  See Hill v. Borough of Kutztown, 455 F.3d 225, 233 (3d Cir. 2006).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Beyond the plain meaning of its text, the Eleventh Amendment has also been construed to bar federal lawsuits by citizens against their own states and their states' agencies except in limited circumstances.

-8-

Hans v. Louisiana, 134 U.S. 1 (1980); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1998).

Under the Ex parte Young line of cases, a plaintiff may sue a state officer solely for prospective injunctive or declaratory relief.  Ex parte Young, 209 U.S. 123 (1908).  The Supreme Court in Ex parte Young explained that the Eleventh Amendment cannot insulate a state or its officers "from responsibility to the supreme authority of the United States."  Ex parte Young, 209 U.S. at 160.  Any future unconstitutional action by the officer would therefore be void and may properly be enjoined by a federal court.  See id.  When such an injunction is sought against a state official, it is not crucial to the Eleventh Amendment analysis whether that person is sued in his or her individual or representative capacity.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989); Chester Upland Sch. Dist. v. Pennsylvania, 861 F. Supp. 2d 492, 512-13 (E.D. Pa. 2012).

The type of relief the plaintiff requests is the key issue.  The "general criterion for determining when a suit is in fact against the sovereign is the effect of the relief sought."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 107 (1984).  Suits for retroactive relief that necessarily will be paid from the state's treasury are barred even if nominally brought against a state officer because they are functionally indistinguishable from a suit against the state itself.  Edelman v. Jordan, 415 U.S. 651,

663, 667 (1974).  Even equitable actions that "closely ... resemble a money judgment payable out of the state treasury," including actions for specific performance of a contract, are impermissible. Edelman, 415 U.S. at 666.

Worth has not been a model of clarity in explaining what relief it wants.  In essence, it appears that Worth asks the court to enjoin the defendants from acting under the cloak of federal authority as an SAA until they take steps to comply with revised federal regulations.  Worth further requests the court to declare null and void the PATC's denials of Worth's exemption requests, to nullify any recognition of out-of-state apprenticeship programs with less than a modified 5:1 journeyman-to-apprentice ratio, and to enjoin the enforcement of those denials and recognitions.  The defendants describe these requests as impermissible retroactive relief seeking to compel the PATC "to reverse its previous discretionary decisions."  They further argue that "the court may not issue an order directing specific performance at a State."

We do not agree.  The precedent that the defendants cite makes clear that the Eleventh Amendment only proscribes specific performance "closely ... resembl[ing] a money judgment payable out of the state treasury."  Edelman, 415 U.S. at 666.  Worth essentially seeks a "cease-and-desist" order preventing the PATC from continuing to regulate journeyman-to-apprentice ratios until it obtains renewed federal authority, and we have no reason to

-10-

believe such relief would have anything more than an ancillary
effect on the Commonwealth's treasury.  See id. at 668.  As a
result, while the PATC as a departmental agency clearly must be
dismissed from the case, the Eleventh Amendment presents no bar to
Worth's claims against the individual defendants, who are the
individual members of the PATC, PATC Acting Director Peter Von
Getzie, and Secretary of the Department of Labor & Industry Julia
K. Hearthway.[3]

### IV.

     We now focus on the substance of Worth's three claims
for constitutional redress brought under § 1983.  As noted above,
count two of the amended complaint pleads an equal protection
claim, count three a procedural due process claim, and count a four
substantive due process claim.  For each, Worth contests two
aspects of the PATC's conduct.  First, Worth takes issue with the
PATC's failure to subject out-of-state apprenticeship programs to
its journeyman-to-apprentice ratio rules in accordance with federal
regulations that were revised in 2008.  Second, Worth objects to

---

[3]  The scope of the Eleventh Amendment and that of § 1983 are
distinct issues, but our conclusion means that Worth meets the
statutory requirements of § 1983 as well.  Will, 491 U.S. at 66.
State officials, regardless of whether they are sued in their
individual or official capacities, are "person[s]" amenable to
suit under § 1983 when sued solely for prospective relief.
Hafer v. Melo, 502 U.S. 21, 27 (1991); Will, 491 U.S. at 71
n.10.

the PATC's denial of the company's requests to change its own ratio.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  To state an equal protection claim, a plaintiff must assert facts sufficient to make it plausible first that the defendant acted with purposeful discrimination, and second "that [the plaintiff] received different treatment from that received by other individuals similarly situated." Chambers ex rel Chambers v. School Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009) (quoting Andrews v. Phila., 895 F.2d 1469, 1480 (3d Cir.1990)).

In the present matter, Worth has not set forth any facts as to how it has been treated differently than any other similarly situated in-state or out-of-state contractor.[4]  Indeed, Worth does not identify any other contractor in the amended complaint, nor does it claim any specific, publicly-funded contract that the company tried and failed to obtain as a result of the actions and inactions of the PATC.  Without a more substantial basis for

---

[4]  To establish that out-of-state contractors are not required to comply with Pennsylvania's modified 5:1 ratio, Worth relies entirely on a letter from the Pennsylvania Department of Labor & Industry stating that "[t]he Bureau of Labor Law Compliance recognizes the status of apprentices from other states, provided those apprentices are in good standing in a federally registered program."

-12-

comparison, it is impossible to infer discrimination.  In short, the amended complaint does not raise more than a "'mere possibility of misconduct.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). The defendants' motion to dismiss will therefore be granted on count two of the amended complaint asserting an equal protection claim.

Worth brings a substantive due process claim in count three.  The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  This provision has a substantive component that exists to protect fundamental constitutional rights.  See, e.g., Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 846-47 (1992) (quoting Whitney v. California, 274 U.S. 357, 373 (1927) (Brandeis, J., concurring)).

The applicable standard for a substantive due process claim depends on whether the scrutinized government act is legislative or non-legislative.  Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000).  The defendants propose that this matter concerns non-legislative acts, and Worth does not argue to the contrary.[5]  To challenge a non-legislative act, which is

---

[5]  To the extent the PATC's failure to act in the face of revised federal regulations can be construed as a legislative act, we

usually an employment decision or another measure that "typically appl[ies] to one person or to a limited number of persons," the plaintiff must first establish that it has a "fundamental" property interest under the United States Constitution before pleading and proving that the act in question worked an "arbitrary or irrational deprivation." Id. The case law on what makes a property interest "fundamental" provides only limited guidance. See id. at 140. We know only that a fundamental property interest is of a "particular quality," which is to be determined by reference to the Constitution itself rather than state law. Id. at 140.

So far our Court of Appeals has only held interests related to real property to be fundamental. Id. at 141. Land ownership, a bedrock form of property right which predates the Constitution, is clearly deserving of the "fundamental" label. See DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell, 53 F.3d 592, 600-01 (3d Cir. 1995), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003); O'Bannon v. Town Court Nursing Ctr., 447

---

only note briefly that we do not sit as a "super PATC" just as we are not a "zoning board of appeals." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003). Maintaining the status quo by inaction is frequently a rational way for a state or other government body to address an issue defined by competing interests and limited resources, and the Fourteenth Amendment does not give us license to second-guess such a decision. Cf. Parker Ave., L.P. v. City of Phila., Civil Action No. 13-121, 2013 WL 4196420, at *5 (E.D. Pa. Aug. 15, 2013).

U.S. 773, 792 n.2 (1980) (Blackmun, J., concurring). In contrast, our Court of Appeals has made it clear that interests in public employment, in being awarded a public contract as the low bidder, or even in a "right to make a living" do not enjoy the same constitutional status as ownership in real estate. Wrench Transp. Sys., Inc. v. Bradley, 340 F. App'x 812, 815-16 (3d Cir. 2009); Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1177-80 (3d Cir. 1997).

In the case before us, Worth simply argues that its claim should survive dismissal because the scope of cognizable fundamental property interests has not been fully delineated.[6] We disagree. Worth's interest in operating under a lower journeyman-to-apprentice ratio is not a fundamental property interest. It cannot be analogized to the realm of real property. Worth's asserted interest is much more akin to those interests in public employment or the award of public contracts for which our Court of Appeals has previously denied substantive due process protection. We conclude that Worth fails to make out a cognizable substantive

---

[6] Worth further cites Sameric Corp. of Del., Inc. v. City of Philadelphia for the proposition that it need only plead that the PATC "deliberately and arbitrarily abused its power" to state a substantive due process claim. 142 F.3d 582, 595 (3d Cir. 1998). This position ignores the antecedent requirement that Worth establish a property interest that falls within the protection of the Substantive Due Process Clause. Nicholas, 227 F.3d at 139-40.

due process claim.  Accordingly, count three of Worth's amended complaint will be dismissed under Rule 12(b)(6).

In count four of the amended complaint, Worth brings a procedural due process claim.  To state such a claim, a plaintiff must plead first that it has been deprived by the Commonwealth of Pennsylvania or its officials of an interest encompassed by the Fourteenth Amendment's protection of life, liberty, or property, and second that available procedures did not provide adequate protection of that interest.  Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).  "[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He [or she] must have more than a unilateral expectation of it.  [The person] must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents v. Roth, 408 U.S. 564, 575-77 (1972).  This is a different inquiry than determining whether a property interest is of a "particular quality" in the substantive due process context.  Nicholas, 227 F.3d at 140.

Whether a property interest rises to the level of an entitlement for purposes of procedural due process depends substantially on the degree to which the interest is definite and protected from revocation.  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005).  Tenured employment and social security benefits are

examples of the sort of interests sufficiently well-recognized to be entitlements for which process is due before a deprivation may occur.  Roth, 408 U.S. at 576-77; Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

     In contrast, our Court of Appeals held in Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority that a low bidder seeking to win a public contract has no constitutional entitlement in actually being awarded the contract.  103 F.3d 1165, 1177-80 (3d Cir. 1997).  The court explained that under Pennsylvania law the Commonwealth's competitive bidding statutes exist for the benefit of taxpayers and not the low bidder.  Indep. Enters., 103 F.3d at 1178 (citing R.S. Noonan, Inc. v. School Dist. of York, 162 A.2d 623, 624-25 (Pa. 1960)).

     If a successful bidder has no entitlement to a public contract, it follows that a party's constitutional right to compete for such a contract on a level playing field is even more tenuous. Indeed, in the apprenticeship setting, the PATC has considerable discretion under applicable statute and regulations to grant a ratio exemption to a party operating an apprenticeship training program in the state.  29 C.F.R. § 29.5(b)(7); 43 Pa. Cons. Stat. Ann. § 90.4; 34 Pa. Code § 83.5(b)(7).  Worth therefore has no protected entitlement in such an exemption.  Town of Castle Rock, 545 U.S. at 756.

Worth also contests the PATC's failure to comply with revised federal law, which requires the PATC to apply its ratio rules to out-of-state apprenticeship programs before granting them reciprocal recognition.  29 C.F.R. § 29.13(b)(7).  The company contends that this federal requirement is sufficiently definite to create an entitlement in Worth "to the benefit of an apprenticeship ratio that [is] equalized and applicable to all in-state and out-of-state contractors."

Based on a close reading of the revised federal regulation's text in conjunction with Pennsylvania's apprenticeship rules, we cannot agree.  Section 29.13(b)(7) of the revised regulations requires Pennsylvania to afford reciprocal approval of an out-of-state apprenticeship training program as long as the program "meet[s] the wage and hour provisions and apprentice ratio standards of" the Commonwealth.  29 C.F.R. § 29.13(b)(7).  In Pennsylvania, the standard journeyman-to-apprentice ratio is a modified 5:1 ratio, but the PATC is free to allow any deviation from that ratio that is "consistent with proper supervision, training, safety, and continuity of employment."  29 C.F.R. § 29.5(b)(7); 34 Pa. Code. § 83.5(b)(7); 29 C.F.R. § 29.5(b)(7). Under this standard, neither federal nor Pennsylvania law contains a guarantee that all apprenticeship programs, either in-state or out-of-state, must conform to the same ratio.

As a result, if out-of-state contractors are explicitly made subject to Pennsylvania's rules as Worth requests and the federal regulations mandate, the PATC still has discretion to grant exemption requests to out-of-state contractors independent of the ratio Worth is required to follow.  Id.  Worth cannot plausibly claim a constitutional entitlement to "an apprenticeship ratio that [is] equalized and applicable to all in-state and out-of-state contractors" when no federal or state authority imposes that requirement.  Nor can Worth claim that it has been deprived of such a benefit, since it has failed to plead any specific circumstances in which a competitor has enjoyed a more lenient ratio.  Because Worth has not sufficiently pleaded the denial of a constitutional entitlement, we need not address the adequacy of any procedures that were or were not available to the company.  Count four of the amended complaint, like counts two and three, will be dismissed for failure to state a claim upon which relief can be granted.

V.

We now address count five of the amended complaint, in which Worth brings a claim for tortious interference with contract under state common law against the individual members of the PATC only.  The defendants contend that we may not consider this claim because sovereign immunity protects a "Commonwealth party," including any state "agency or employee thereof ... with respect to an act within the scope of his office or employment," from suit

-19-

based on state law except in a limited number of circumstances not applicable to this action.  42 Pa. Cons. Stat. Ann. §§ 8501; 8521; 1 Pa. Cons. Stat. Ann. § 2310.  Worth counters that the PATC members were acting outside the scope of their authority because they falsely held themselves out to be operating as a federally-approved SAA when the PATC had not applied for re-recognition as required under revised federal regulations.

Whether an agency employee is acting within the scope of his or her employment is a matter of state law.  Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Pennsylvania has adopted the Restatement (Second) of Agency § 228 to define the scope of employment in the sovereign immunity context.  Kull v. Guisse, 81 A.3d 148, 153-54 (Pa. Commw. Ct. 2013).  Under the Restatement,

> (1)  Conduct of a servant is within the scope of employment if, but only if:
>> (a)  it is of the kind he is employed to perform;
>> (b)  it occurs substantially within the authorized time and space limits;
>> (c)  it is actuated, at least in part, by a purpose to serve the master....

Restatement (Second) of Agency § 228(1).  If § 228 is satisfied, an employee is acting within the scope of employment even if the employee's acts are unlawful or unauthorized.  See Brumfield, 232 F.3d at 381.

In the case at bar, Worth pleads no facts to suggest that the actions taken (or not taken) by individual PATC members with respect to apprenticeship ratios were not the kind that the members were to perform as part of their duties.  Restatement (Second) of Agency § 228(1)(a).  Nor is there anything in the amended complaint to suggest that these matters occurred outside prescribed time and space limits or were motivated by anything other than a purpose to execute the duties of the PATC.  Id. § 228(1)(b)-(c).  In addition, in light of § 228, Worth's argument that the individual members of the PATC were acting outside the scope of their employment because they lacked federal authority is clearly wide of the mark.  Sovereign immunity under state law bars Worth's claim against the individual members of the PATC for tortious interference with contract.  Count five of the amended complaint will be dismissed under Rule 12(b)(1).[7]

### VI.

We finally address count one of the amended complaint, in which Worth brings an action for declaratory judgment against

---

[7]  It is not entirely clear whether state sovereign immunity is properly construed as a defect in subject-matter jurisdiction or as some other bar to further adjudication.  See Lombardo v. Pa. Dep't of Public Welfare, 540 F.3d 190, 197 n.6 (3d Cir. 2008).  We will follow the most recent decision of our Court of Appeals, which upheld a dismissal of state-law claims on sovereign immunity grounds under Rule 12(b)(1), and dismiss this count for lack of subject-matter jurisdiction.  Gary v. Pa. Human Relations Comm'n, 497 F. App'x 223, 226-27 (3d Cir. 2012).

all defendants.  It is unclear whether count one is brought
pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201,
or the Pennsylvania Declaratory Judgments Act, 42 Pa. Cons. Stat.
Ann. § 7531 et seq.[8]  In any event, under either statute, we can
grant declaratory judgment only when it would be "of practical help
in ending [a] controversy" concerning an independent, substantive
legal right.  See Gulnac by Gulnac v. S. Butler Cnty. Sch. Dist.,
587 A.2d 699, 700-01 (Pa. 1991); Skelly Oil Co. v. Phillips
Petroleum Co., 339 U.S. 667, 671-72 (1950).  All of Worth's
substantive claims are being dismissed for the reasons discussed
above, and we agree with those courts holding that there is no
additional, implied right of action under the National
Apprenticeship Act.  See, e.g., Joint Apprenticeship & Training
Council v. N.Y. State Dep't of Labor, 829 F. Supp. 101, 104
(S.D.N.Y. 1993).  There is therefore no remaining basis upon which
we might grant declaratory relief.  Count one of the amended
complaint will be dismissed under Rule 12(b)(6).

                              VII.

        In sum, we will grant the defendants' motion to dismiss
Worth's amended complaint on all five counts.  All claims Worth
brings against the PATC itself are barred by the Eleventh Amendment

---

[8]  Worth argues in its brief that the Pennsylvania statute is, in
fact, the basis for count one.  We question whether this is so,
noting that the amended complaint makes no reference to the
state statute, while it does invoke § 2201 in its statement of
jurisdiction and venue.

and will be dismissed pursuant to Rule 12(b)(1).  With respect to the remaining defendants, who are the individual members of the PATC, PATC Acting Director Peter Von Getzie, and Secretary of the Department of Labor & Industry Julia K. Hearthway, count one will be dismissed under Rule 12(b)(6) for want of an independent, substantive claim upon which relief can be granted.  Counts two through four of the amended complaint will further be dismissed under Rule 12(b)(6) because Worth fails to plead plausible claims for relief under the Fourteenth Amendment.  Finally, count five of Worth's complaint will be dismissed under Rule 12(b)(1) because of sovereign immunity under Pennsylvania law.